Douglas A. Buxbaum
BUXBAUM DAUE PLLC
3301 Great Northern Ave., Ste. 201
Missoula, MT 59808
Telephone: (406) 327-8677
Fax No.: (406) 829-9840
E-Mail: dbuxbaum@bdlawmt.com

Mike Lamb
LAMB LAW OFFICE, PLLC
2601 E. Broadway St.
Helena, MT 59601
Telephone: (406) 457-1100
Fax No.: (406) 441-2100
E-Mail: lambo@mikelamblaw.com

*Attorneys for Plaintiffs Cheryl and Kenneth Harris*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHERYL and KENNETH HARRIS, individually and as GUARDIANS OF TRESHAWN HARRIS, a Minor,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, on behalf of its agency, DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS, and John and Jane Doe persons and entities 1-10.<br><br>Defendants. | Cause No.:<br><br><br>COMPLAINT |

1

1. Cheryl and Kenneth Harris are the duly appointed Guardians of Treshawn Harris, their grandson and a minor. Treshawn resides with Cheryl and Kenneth at their home in Billings Heights, Montana. Treshawn was born on June 26, 2018.

2. This action is brought against the United States pursuant to the Federal Tort Claims Act (FTCA), which waives sovereign immunity for actions against the United States resulting from personal injuries caused by the negligent acts of governmental employees and agents while acting in the scope of their employment. The Department of Interior and its agency, the Bureau of Indian Affairs (BIA), is the involved agency of the United States. Federal district courts have jurisdiction over FTCA claims on the basis of 28 U.S.C. § 1346(b)(1).

3. FTCA's waiver of sovereign immunity extends to claims against an Indian tribe or contractor working under a "self-determination contract," also known as a "638 contract," pursuant to the Indian Self-Determination and Education Assistance Act (ISDEAA) (Public Law 93-638). "[A]n Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior…while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement." Department of Interior and Related Agencies Appropriation

Act, Pub. L. No. 101-512, § 314, 104 Stat. 1915 (1990).

4. John Does Persons and Entities 1-10 are persons or entities not yet known to the Plaintiffs who may share in the legal responsibility for Plaintiffs' damages.

5. Notice of this Claim was properly provided pursuant to Title 28, U.S. Code, Section 2675 (a) on April 10, 2020. Notice of this claim was filed more than six months prior to the date hereof, and the agency has failed to make final disposition of the claim. Pursuant to the FTCA, therefore, the claim may be deemed denied and this action may be commenced.

6. The Rosebud Lodge and Shelter is a facility in Lame Deer, Montana, operated by the BIA and its contracting persons or entities under a 638 Contract between the Northern Cheyenne Tribe and the BIA to provide social services including child foster care, child protective services, welfare and general assistance programs. The acts and conduct described and alleged herein were performed by persons, and/or contractors to the BIA while acting within the course and scope of their employment or agency in carrying out the self-determination contract or contracts, including the services and administration of the Rosebud Lodge and Shelter. As such the persons involved in the acts, omissions and events described herein are deemed employees of the BIA for purposes of FTCA liability by operation of law.

7. The Rosebud Lodge is operated as a shelter facility for children in need of care and support who may have been removed from parental custody and control. The persons working in this facility at the time of the event were employees of the BIA by operation of law.

8. At the time Treshawn Harris sustained the injuries which are the subject of this claim, he was an infant resident of the Rosebud Lodge and Shelter, subject to the exclusive care, custody and control of the Rosebud Lodge staff and administration, all the legal responsibility of the BIA and ultimately the Department of Interior of the United States. The Rosebud Lodge had custody, control over, and responsibility for all care and treatment provided to Treshawn while at the facility.

9. Treshawn Harris was admitted to the University of Utah Hospital Burn Unit on April 23, 2019, at about ten months of age. Treshawn had been "in BIA-SS [social services] custody and was staying at the Rosebud Lodge Emergency Shelter for the last month." (Admitting History, April 23, 2019.) Treshawn had been removed from his mother Sydney's custody a month prior to his Burn Unit admission. According to the record at the University hospital Burn Unit, "Sydney has not seen him since he was taken into custody" by BIA social services. (Progress note of Dr. Larissa Hines April 24, 2019.)

10. Treshawn was transferred to the Burn Unit by air ambulance from the Rosebud Lodge in Lame Deer, Montana. According to Dr. Hines' medical

documentation, Treshawn "was admitted to the Burn Unit for nearly 60% TBSA [total body surface area] full thickness burns to his back, buttock, bilateral arms and legs." At the time of admission to the Burn Unit, Treshawn was also diagnosed to be "in burn shock with rising lactic acid, hypotension requiring bolus also and Levophed," a description of severe shock. Dr. Hines, Treshawn's attending pediatrician, opened communication with BIA social services, child protective services, and the FBI "regarding further information regarding history and scene." The injuries Treshawn sustained occurred while he was a resident at the Rosebud Lodge and Shelter preceding his transfer to the Burn Unit at the University of Utah Hospital.

11.     Treshawn remained in shock and critical condition throughout much of his stay at the Burn Unit. During this time, he also underwent multiple surgeries including fasciotomies and skin grafting. While hospitalized, an investigation into the events surrounding the burns and intracranial bleeding suffered by Treshawn continued. Treshawn's attending physician conducted a diagnostic evaluation at the Burn Unit hospital which further confirmed that the injuries Treshawn sustained occurred while he was in the exclusive custody and control of the Rosebud Shelter and its caregivers. The conduct causing Treshawn's injuries was negligent and in departure from the standard of care owed to this child by the Rosebud Shelter and its employed caregivers and staff.

12. During the course of the investigation summarized above, it also became apparent that the scald burns sustained by Treshawn were the result of excessively hot water issuing from a hot water heater at the Rosebud Shelter from which Treshawn's bath water was taken. The temperature of the water, as the Plaintiffs were informed, was unsafe and excessively high. A childcare facility such as the Rosebud Lodge is responsible to maintain water temperatures that do not pose a risk of burns to its residents. In failing to do so act, the Rosebud Lodge and its employed staff were negligent.

13. Treshawn suffered multiple injuries while under the care and custody of the Rosebud Lodge and Shelter which are summarized to include, without limitation, the following:

    (a) The burns, grafting, compartment syndromes, and ischemic events have resulted in very substantial muscle, skin and tissue loss and damage. These have also, in turn, resulted in contractures which further limit his movements and function.

    (b) Shock state effects, subdural hemorrhages, and brain trauma have caused substantial and permanent brain injuries and dysfunction.

    (c) Treshawn has discoloration and extensive deformities secondary to his burns and necessary surgeries and grafting.

    (d) The pain and agonizing effects of these injuries on this 10-month-old child are not subject to easy description. These effects are ongoing and likely permanent.

 (e) Treshawn, through his Guardians, has incurred, and will continue to incur, medical expenses including medication, therapies, assistive devices and potential surgeries.

 (f) Treshawn will, more probably than not, experience a substantial lifetime reduction in earning capacity.

 (g) Treshawn will, more probably than not, require lifetime assistance of one or more types of medical, attendant, therapeutic and other needs.

## COUNT I

14. The Defendant BIA, acting through its actual and deemed employees and agents of the Rosebud Lodge and Shelter, all acting within the course and scope of their employment and agency, was negligent, including, without limitation, the following:

 (a) Causing traumatic hemorrhagic brain injuries to Treshawn Harris;

 (b) Causing severe and extensive burn and scald injuries to Treshawn Harris;

 (c) Failing to provide appropriate monitoring, observation and attention to Treshawn Harris;

 (d) Failing to provide appropriate supervision to those attending to Treshawn Harris;

 (e) Failing to assure that persons caring for Treshawn Harris were adequately trained and were otherwise safe to attend to him;

 (f) Failing to provide a safe facility and environment of care for Treshawn Harris.

## COUNT II

15. The negligence of the Defendant BIA:

    (a) Is the legal cause of Treshawn's brain and central nervous system injuries and their lifetime consequences;

    (b) Is the legal cause of Treshawn's lifetime consequences;

    (c) Is the legal cause of associated musculoskeletal, organ system, disfigurement, and disabling conditions of likely life time consequence to Treshawn;

    (d) Is the legal cause of necessary care and services required by Treshawn;

    (e) Is a substantial contributing factor in bringing about the injuries incurred by Treshawn.

## COUNT III

16. Treshawn Harris. has incurred damages including, without limitation, the following:

    (a) Medical, therapeutic, surgical and attendant care costs, past and future;

    (b) Loss of earning capacity over his lifetime;

    (c) Personal attendant, nursing, and management costs over his lifetime;

    (d) Physical disfigurement and disabling conditions;

    (e) Pain and suffering, past and future;

    (f) Interruption of an established and expected course of life;

  (g) The damages claimed and sustained exceed all jurisdictional prerequisites.

17. Cheryl and Kenneth Harris have been extensively and necessarily involved in providing home therapies, care, observation and monitoring of Treshawn's health status and condition.  These responsibilities and physician's requirements for Treshawn's health management substantially preclude Cheryl and Kenneth from the pursuit of income from other pursuits and require nearly constant attention.  These services have substantial value and replace otherwise expensive services and care, entitling them to just compensation therefor.

18. The Plaintiffs otherwise request entry of judgment in their behalf and claim all further remedies and damages available under the substantive law of Montana, including interest on any and all appropriate sums.

DATED this 21st day of December, 2020.

    BUXBAUM DAUE PLLC

    /s/ Douglas A. Buxbaum
    Douglas A. Buxbaum
    Attorneys for Plaintiffs Cheryl and Kenneth Harris

    LAMB LAW OFFICE, PLLC

    /s/ Mike Lamb
    Mike Lamb
    Attorneys for Plaintiffs Cheryl and Kenneth Harris